## FOX v. CLARK.

(Supreme Court, Appellate Division, Second Department. October 10, 1899.)

1. BUILDING CONTRACT — PERFORMANCE — CERTIFICATE OF ARCHITECT — PAYMENTS.

Under a building contract, a payment was to be due when the buildings were "inclosed and ready for lathing," on a certificate of the architect that the work was done in strict accordance with specifications, and that he found the payment "properly due." Held that, to justify a finding that the architect unreasonably withheld the certificate, the proof should show, not only an absolute compliance with the specifications, but that the architect could not, with any fair degree of reason, have any doubt that the payment was "properly due."

2. SAME—SUBSTANTIAL PERFORMANCE.

There is no substantial performance of a building contract making payment of an installment due, where the contract provides for payment when the building is "inclosed and ready for lathing," and heating pipes and speaking tubes, called for in the specifications, are not in place.

3. SAME—RESCISSION.

A contractor claimed that an installment was due on a certain day, but the architect pointed out work to be finished, and, without demanding the installment, the contractor stopped work because it was not paid, and so notified the owner. Five days later, on a holiday, the contractor, being drunk, went on the premises, and threatened the architect, and the owner ordered him off the place, and at once gave him the 48-hours notice to proceed with the work, as provided in the contract, in case the contractor caused an unreasonable suspension of the work. The contract provided that, in case the contractor failed to proceed after notice, the owner could complete the work, and deduct the expense from the amount of the contract, or any part of it due, and the owner did complete it, at a cost in excess of the contract price. Held, that the order to leave the premises was not a rescission by the owner, and the contractor, being in default, could not sue on a quantum meruit for the value of the work performed by him.

Appeal from judgment on report of referee.

Action by Luke Fox against Arthur L. Clark. There was a judgment for plaintiff entered on the decision of a referee, and defendant appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Arthur L. Clark, in pro. per.

David B. Simpson (John J. Crennan, on the brief), for respondent.

WOODWARD, J. The plaintiff, in company with one Fallon, entered into a written contract to erect two cottages for the defendant for the sum of $4,675. The firm of Fox & Fallon agreed to furnish all of the material and labor in the construction of these cottages, to be located in the village of New Rochelle, the work to be-

done according to the plans and specifications furnished by Charles Palliser, architect, and under his supervision. It was agreed that the first payment, of $450 on each of the cottages, should be made when the frames were up, the sheathing on, and the roofs up. The second payment, of $600 on each house, "when each house is ready for lathing and when each house is inclosed." The third payment was to be made when the houses were inclosed, the sash in, and the floors laid, and the final payment was to be made five days after the completion of the houses. This agreement was with the proviso "that, in each case of the said payments, a certificate shall be obtained from, and signed by, Charles Palliser, architect, to the effect that the work is done in strict accordance with the plans and specifications, and that he considers the payments properly due." The firm of Fox & Fallon began work in December, 1895, and subsequently the architect gave two certificates for the payment of the $450 on each of the two buildings. On the 1st day of February, 1896, Richard B. Fallon, one of the parties to the contract, met the architect, and asked him for a certificate for a second payment on one of the houses. The architect made an examination, and found that the payment was not due; that there were several things yet to be done before there was anything due under the terms of the contract, and he made a memorandum of the work necessary to be done before he could give a certificate. The work continued upon the houses until the 7th day of February, 1896, when the defendant received a letter from Fox & Fallon stating that the second payments were due on both houses, and that, as they had not been paid, they had stopped work. No more work was done by this firm, and no further communication passed between them, until the 12th day of February, a legal holiday, when the defer¹ant visited the premises to look over the houses. There was no enter work in progress upon the buildings at that time, but ...ntiff, who had been drinking, and was apparently much under the influence of liquor, was there, in company with the architect and others. The architect was attempting to explain to the plaintiff what would be necessary to complete the work so that the second payment would be due. Upon the appearance of the defendant, plaintiff demanded to know why the second payment was not made, and defendant told him he was ready and willing to make the payment as soon as plaintiff secured the necessary certificates. The plaintiff then demanded the certificates from the architect, who explained to him the work necessary to be done in order that the plaintiff should be entitled to the second payment. The plaintiff fell into a rage, using harsh and abusive language towards the architect, who appealed to the defendant for protection. At this point defendant interfered, and told the plaintiff that he was drunk, and ordered him to leave the premises. There is no material dispute up to this point, but it is contended on the part of the plaintiff that in ordering the plaintiff to leave the premises the defendant told him to present his bills, and that he (the defendant) would pay him all that was coming to him. Upon this there is a conflict of evidence, the defendant, corroborated by his witnesses, denying any-

thing more than the order of the defendant for the plaintiff to leave the premises; the plaintiff, supported by his witnesses, holding to the promise of the defendant to pay anything which might be due to the plaintiff. On this appeal from the decision of the referee, however, the plaintiff does not contend that this constituted a new contract, but that it was a rescission of the original contract; and he seeks to recover for that portion of the work and materials which had been furnished up to the 12th day of February, when he was ordered from the premises. The learned referee computes the amount which the plaintiff had expended up to the time of the so-called rescission of the contract, and, after crediting the defendant with the $900 which he had paid, directs judgment for the balance, with costs and interest, aggregating $2,745.25. The defendant sets up in his answer a counterclaim for damages due to the refusal of the plaintiff to comply with the provisions of the contract, and denies that he refused to make payments when due, or that the contract was rescinded, and alleges full performance on his part of all of the terms and conditions of the contract.

We are of opinion that the learned referee has erred in his application of the law to the facts in this case. There could be no question of substantial performance of the contract. The contract was for the completion of two cottages in the manner pointed out by the plans and specifications, but the payments were to be made in installments, upon the certificate that the buildings had reached a certain stage of completion. The question on the 12th day of February, 1896, was not whether the plaintiff had substantially complied with his contract, but whether the second payment was due. The test of whether that payment was due was whether the buildings were "inclosed and ready for lathing," and it was stipulated in the contract that the evidence of this fact should be the certificate of the architect to the effect "that the work is done in strict accordance with the drawings and specifications, and that he considers the payment properly due." The complaint contains no averment that the architect unreasonably withheld his certificate, as it should have done. Weeks v. O'Brien, 141 N. Y. 199, 202, 36 N. E. 185. The defendant did not call the attention of the court to the defect, but it may be said that there was no evidence in the case from which it could be fairly inferred that the architect was actuated by any improper motives in refusing to give the certificate at the time. He was required by the contract to state, in effect, that "the work is done in strict accordance with the drawings and specifications, and that he considers the payment properly due." Admitting that evidence might be received in support of the theory that the certificate was unreasonably withheld, to establish such unreasonableness, under the provisions of the contract, it was necessary to show, not only an absolute compliance with the drawings and specifications, but facts which would establish that the architect could not, with any fair degree of reason, have any doubt that the payment was "properly due." We fail to find such evidence in the record. On the contrary, it appears from the plaintiff's own admissions that the heating pipes, speaking

tubes, etc., which the plans and specifications called for, and which it was necessary should be in place before the lathing could be completed, were not in the building at the date mentioned. This being merely a payment of an installment, there could be no substantial performance which would render the payment due. The plaintiff suffered no legal wrong by having his payment deferred until he had complied with the conditions necessary to entitle him to payment. He could have completed the construction within the terms and conditions of the contract, and recovered the amount agreed upon, by showing a substantial performance of the whole contract, but he could not claim that a single installment was due, except by complying with the letter of the agreement under which the parties were acting. He did not have the certificate of the architect required by the contract. He has not established that he had the buildings in the condition demanded by the agreement as a condition of the second payment becoming due, or that the architect had reason to believe that the payment was fairly due. Under these circumstances, it cannot be held that the defendant had failed to keep his covenant; and, without default on his part, it cannot be said that there was any ground for a rescission of the contract. The mere fact that the defendant ordered the plaintiff to leave the premises under the circumstances detailed in the evidence is not sufficient to relieve the plaintiff from the obligations of his contract. He was not there in pursuance of the work which he had undertaken. He was not in charge of any work, and no men left the building on account of his leaving. He was disorderly, and threatened the architect, and the proprietor of the premises ordered him to leave, not with any reference to the contract, but for the purpose of preserving the peace. That the defendant did not consider the contract at an end is evidenced by the fact that he immediately caused notice to be served on the plaintiff's firm, under the provisions of paragraph 4 of the contract, which provides that:

"Should the contractors, at any time during the progress of said works, become bankrupt, refuse or neglect to supply a sufficiency of material or workmen, or cause any unreasonable neglect or suspension of work, or fail or refuse to follow the drawings and specifications, or comply with any of the articles of agreement, the proprietor or his agents shall have the right and power to enter upon and take possession of the premises, and may at once terminate the contract; whereupon all claims of the contractors, their executors, administrators, or assigns, shall cease; and the proprietor may provide material and workmen sufficient to complete the said works, after giving forty-eight hours' notice in writing, directed and delivered to the contractors, or at their residence or place of business; and the expenses of the notice, and the completion of the various works, will be deducted from the amount of the contract, or any part of it due, or to become due, to the contractors; * * * but, if any balance upon the amount of this contract remains after completion in respect of work done during the time of the defaulting contractors, the same shall belong to the persons legally representing them, but the proprietor shall not be liable or accountable to them in any way for the manner in which he may have gotten the work completed."

It is evident, from a reading of the fourth paragraph, that the contractors were in default on the 7th day of February. They at that time suspended work under their contract, making the excuse

that a payment was due, but without making any demand for the same, under the conditions set forth in the contract. All that it was necessary for the defendant to do was to give the notice required by the contract, when the expense of completing the work would be "deducted from the amount of the contract, or any part of it due, or to become due, to the contractors." If it be conceded, then, that the payment was due on the 12th day of February, by reason of substantial performance of the contract up to that time, it is apparent that the plaintiff, being already in default by reason of a discontinuance of the work five days before, could gain no right to rescind the contract by reason of anything that was said or done on the occasion of the meeting on the 12th of February. The plaintiff being in default, the right had accrued to the defendant to take the work into his own hands, and to complete it at the expense of the contractors. The defendant had a right to deduct this expense "from the amount of the contract, or any part of it due." He had, therefore, a right to refuse payment until he had acted under the provisions of the contract, and had determined how much expense was necessary to complete the work. There had been no refusal to grant the certificate on the part of the architect on the 7th of February, when the work was discontinued. He had merely pointed out some work which should be finished, in order that he might make the certificate. It does not appear that the contractors were asked to do any work which was not called for by the contract, or that they would have been put to any great inconvenience in complying with the suggestions of the architect. It all had to be done before the contract could be performed, and the defendant had a right to insist that his architect should be satisfied with the progress of the work, as provided by the agreement. The payment was certainly not due on the 7th day of February, when the default on the part of plaintiff occurred, and when the defendant, by the terms of the contract, was authorized, on giving notice, to deduct the cost of completing the buildings under the contract "from the amount of the contract, or any part of it due." This indicates clearly that the parties never intended that a mere disagreement between them as to the time at which any of the payments should be made was to constitute a breach of the contract warranting its rescission. The clause providing for installment payments was evidently inserted for the convenience of the contractors, and they agreed to abide by the determination of the architect as to the particular time when these payments should be due. It was not for them to arbitrarily determine this fact, and to make a refusal on the part of the defendant to pay ground for defaulting on the contract as a whole, or to afford grounds for its rescission.

There having been no rescission of the contract, the parties must be considered as acting under the provisions of that instrument; and the defendant having served notice upon the plaintiff as provided in the contract, and the plaintiff having neglected to take any action, the defendant was justified in completing the buildings, and charging up to the contractors the expense of such work. Weeks v. O'Brien, supra. In the case at bar the evidence shows that the

60 N.Y.S.—16

work of completing the buildings cost in excess of the contract price, including the payment of $900 to the plaintiff, $643.17; so that, if this judgment is allowed to stand, the buildings, which plaintiff agreed to construct for $4,675, will cost the defendant $8,793, or nearly double the original estimate.

The judgment should be reversed, and a new trial granted, costs to abide the event. All concur.